```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
KEYSTONE GLOBAL LLC,                     :
                                         :
                    Plaintiff,           :
                                         :
          -v-                            :       12 Civ. 9077 (DLC)
                                         :
DÉCOR ESSENTIALS LTD. d/b/a BUMPER       :       OPINION AND ORDER
ADVERTISEMENT; and CHARIOT               :
INTERNATIONAL, INC. d/b/a BUMPER         :
BADGER,                                  :
                    Defendants.          :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff Keystone Global LLC:

Jeffrey Sonnabend
SonnabendLaw
600 Prospect Ave.
Brooklyn, NY 11215-6012

For defendant Chariot International, Inc.:

Kenneth F. Florek
Florek & Endres PLLC
1156 Avenue of the Americas
New York, NY 10036

DENISE COTE, District Judge:

Plaintiff Keystone Global LLC ("Keystone") brings this action against defendants Chariot International, Inc. d/b/a Bumper Badger ("Chariot"); Auto Essentials Inc.; Décor Essentials Ltd. d/b/a BumperAdvertisement; Bumper Buster, Inc.

1

d/b/a Bumper Busters; Kesem LLC d/b/a Bumpersecurity; R.R. Lalena Corp.; and Wheels to Lease.  Of these, only Chariot continues to defend this action.[1]  Keystone alleges that defendants have infringed its United States Patents No. 7,866,715 (the "'715 patent") and 8,047,601 (the "'601 patent"), which cover devices designed to protect the rear bumper of a car from minor bumps and scrapes.

   Pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996), the parties have submitted briefing regarding their proposed constructions of the '715 and '601 patents' claims.  The following sets forth the Court's construction of disputed terms.

BACKGROUND

   The parties dispute the construction of the following terms used in the '715 patent: "detachably attaches to a rear bumper" and "detachably attaching to . . . the rear bumper"[2];

---

[1] Keystone settled with each defendant except Décor Essentials Ltd., against which a default was entered on April 19; Auto Essentials, which was dismissed without prejudice by Order of April 19; and Chariot.

[2] The parties dispute whether the term "detachably attaches to a rear bumper" in the preamble limits the claim.  It is not clear why Chariot argues that the preamble must be read as a claim

"stabilizing blocks"; and "attached to the outside face and protruding from the top portion of the base layer."[3]  The parties dispute the same terms in the '601 patent, with two exceptions: the '601 patent replaces the phrase "attached to the outside face" with "on the outside face," and it includes an additional disputed term, "wherein the stabilizing blocks are integrally formed with the base layer."

> Claim 1 of the '715 patent describes (emphasis supplied):
>
> A rear bumper protective device that is fitted atop and <u>detachably attaches to a rear bumper</u> of a vehicle, the rear bumper protective device comprising:
>
> a base layer of hanging flexible material having a top portion, a top edge, side portions, an inside face, an outside face, and a bottom portion, the base layer having a construction and thickness capable of reducing damage to the rear bumper of the vehicle, and being of sufficient dimensions to at least partially hang over the rear bumper of the vehicle when fitted atop the rear bumper of the vehicle, wherein the inside face faces the vehicle and the outside face faces away from the vehicle;

---

limitation, since the claims themselves describe the device as "detachably attaching . . . to the rear bumper."  The parties do not dispute that these terms have the same meaning.

[3] Chariot argues that two additional terms in the '715 patents are "means-plus-function" limitations within the meaning of 35 U.S.C. § 112(f).  In its briefing, Keystone makes no argument to the contrary.

> attachment means connected to said base layer for detachably attaching said base layer to the rear bumper of the vehicle; and
>
> one or more stabilizing blocks, each having a top edge, attached to the outside face and protruding from the top portion of the base layer, the stabilizing blocks positioned such that the top edge of each stabilizing block lies on a common line with the top edge of the base layer.

Claim 10 of the '715 patent is essentially identical, with a slight alteration in the second feature. Where Claim 1 claims "attachment means connected to said base layer for detachably attaching said base layer to the rear bumper of the vehicle," Claim 10 claims "one or more securing means connected to the bumper protective device for detachably attaching to a rear portion of the vehicle."

> Claim 1 of the '601 patent describes (emphasis supplied):
>
> A rear bumper protective device that is fitted atop and detachably attaches to a rear bumper of a vehicle, the rear bumper protective device comprising:
>
> a base layer of hanging flexible material that is substantially planar when vertically hanging, wherein the material has a top portion, a top edge, side portions, an inside face, an outside face, and a bottom portion, the base layer having a construction and thickness capable of reducing damage to the rear bumper of the vehicle, and being of sufficient dimensions to at least partially hang over the rear bumper of the vehicle when fitted atop the rear bumper of the vehicle, wherein the inside face faces the vehicle and the outside face faces away from the vehicle, and wherein the inside face has a non-broken,

4

>   substantially vertical planar surface at the intersection of the inside face to the top portion;
>
>   attachment means connected to said base layer for <u>detachably attaching said base layer to the rear bumper of the vehicle</u>; and
>
>   one or more <u>stabilizing blocks</u>, each having a top edge, <u>on the outside face and protruding from the top portion of the base layer</u>, the stabilizing blocks positioned such that the top edge of each stabilizing block lies on a common line with the top edge of the base layer, <u>wherein the stabilizing blocks are integrally formed with the base layer</u>.

As with Claim 10 of the '715 patent, Claim 11 of the '601 patent replaces the term "attachment means connected to said base layer for detachably attaching said base layer to the rear bumper of the vehicle" used in Claim 1 with "one or more securing means connected to the bumper protective device for detachably attaching to a rear portion of the vehicle."

## DISCUSSION

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (<u>en banc</u>) (citation omitted).  Patent construction is a question of law, the interpretation of which

5

is entrusted to judges.  Markman, 517 U.S. at 391.  In construing a patent claim a court "should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history."  PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1362 (Fed. Cir. 2005).  "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation."  Phillips, 415 F.3d at 1313.

Other than the language of the patent claim itself, "the specification is the single best guide to the meaning of a claim term."  Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1378 (Fed. Cir. 2006).  In other words, "claims must be read in view of the specification, of which they are a part."  Phillips, 415 F.3d at 1315.  Within the specification, a patentee "can act as his own lexicographer to specifically define terms of a claim contrary to their ordinary meaning."  Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc., 467 F.3d 1370, 1376 (Fed. Cir. 2006).  Although courts use the specification "to interpret the meaning of a claim," they must "avoid the danger of reading limitations from the specification into the claim" itself.  Phillips, 415 F.3d at 1323.

The prosecution history may also "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution." Id. at 1317.  Indeed, because the prosecution history includes the applicant's express representations made to the PTO examiner, it may be "of critical significance in determining the meaning of the claims." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The prosecution history's instructive value is mitigated, however, by the fact that it "represents an ongoing negotiation between the PTO and the applicant . . . [and] often lacks the clarity of the specification." Phillips, 415 F.3d at 1317.

In its proposed claim constructions, Keystone relies exclusively on an online dictionary.  Federal Circuit law treats dictionaries as extrinsic evidence that, like expert testimony and treatises, should be "less significant than the intrinsic record in determining the legally operative meaning of claim language." Id. (citation omitted).  Dictionaries can prove a fitting source for claim construction, but only so long as they remain subordinate to the language of the claim terms and specification.  "[J]udges are free to consult dictionaries and

7

technical treatises . . . when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." Id. at 1322-23 (citation omitted).  If the meaning of the claim is clear from the intrinsic evidence alone, resort to extrinsic evidence is improper.  Boss Control, Inc. v. Bombardier Inc., 410 F.3d 1372, 1377 (Fed. Cir. 2005).

I.   "Detachably Attaches to a Rear Bumper"

All four claims at issue describe a device that "detachably attaches to a rear bumper" and includes either "attachment means . . . for detachably attaching [the] base layer to the rear bumper" or "securing means . . . for detachably attaching to a rear portion of the vehicle."  Keystone argues that "detachably attaching" should be read to mean "connected to the rear bumper in a disengageable (non-permanent) fashion."  Chariot, on the other hand, argues that "detachably attaches" must be read to require the device to be attached directly to the rear bumper itself, or, as Chariot would have it, "attached specifically to a rear bumper."

The embodiments disclosed in the specifications do not show a device that is attached directly to the rear bumper.  Rather, they describe "securing means" that "are preferably attached by

any suitable means onto or into the trunk portion of the vehicle."  The accompanying figure shows two arms extending above the device and above the rear bumper of a car.  "A claim construction that excludes the preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support."  SynQor, Inc. v. Artesyn Techs., Inc., 709 F.3d 1365, 1378-79 (Fed. Cir. 2013) (citation omitted).

Thus, using the specification as a guide, Keystone's construction of the term is correct.  To "detachably attach" to the rear bumper it is not necessary that the device attach directly or be affixed to the rear bumper.  See Douglas Dynamics, LLC v. Buyers Prods. Co., 717 F.3d 1336, 1342 (Fed. Cir. 2013) (reversing district court conclusion that the term "connected to" required "a direct connection" because "[t]he ordinary meaning of 'connected to' encompasses indirect linkages").

Chariot relies on the prosecution history to support its reading.  But, Chariot's analysis of the prosecution history is not persuasive.  Chariot focuses on correspondence with the Patent Examiner regarding a prior art reference called "Braun."[4]

---

[4] U.S. Patent No. 4,231,600.

9

Braun taught a rear bumper that is bolted to the chassis of a vehicle, and the applicant for the '715 patent added, in two rounds of amendments, language to clarify that the device at issue here was "fitted atop" the rear bumper and "detachably attached" to it.  Chariot argues that these changes show that the applicant was required to claim a device attached directly to the rear bumper to avoid Braun, which claims a device bolted to the chassis.  Keystone's reading, however, is more plausible.  Keystone's language, and its interpretation here, underscore that the device is detachable and not bolted to the car.

II. "Stabilizing Blocks"

All four claims at issue also refer to "one or more stabilizing blocks."  Keystone, again drawing from an online dictionary, suggests that these terms should be construed as claiming "a discrete, solid mass of material to make stable the device."  Chariot argues that "stabilizing blocks" should mean simply "a protrusion or raised edge," or, alternatively, "a protrusion or raised edge to reduce curling."

Once again, Keystone's proposed construction hews much more closely to the "ordinary and customary meaning," Phillips, 415 F.3d at 1313, of the words used in the claim.  In particular, Keystone gives effect to the word "stabilizing," while Chariot

effectively reads it out of the claim entirely in its first proposed construction ("a protrusion or raised edge") and gives it only a shadow of its ordinary meaning in the second proposed construction (". . . to reduce curling").

Chariot relies on the specification, arguing that it expressly defines the term "stabilizing block" to mean "a protrusion or raised edge." The cited passage does not support this argument. It reads:

> In a preferred embodiment, the stabilizing block is in the form of a protrusion or raised edge . . . of sufficient rigidity, thickness, width, and length to reduce curling of the rear bumper protective cover. The stabilizing block is particularly effective in reducing lateral curling or rolling, i.e., curling, rolling, or flapping roughly parallel with the sides of the vehicle.

Through this text the inventor of the '715 patent did not expressly limit the term "stabilizing block" to mean only "a protrusion or raised edge." See Home Diagnostics, Inc. v. LifeScan, Inc., 381 F.3d 1352, 1358 (Fed. Cir. 2004) ("Absent a clear disavowal or contrary definition in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language."). Indeed, the specification describes a block that serves a particular function: stabilizing the bumper. Omitting any mention of a stabilizing function

11

makes no sense in light of the specification, and contravenes the ordinary meaning of the claim terms themselves.

Nor does the specification support Chariot's alternate reading, which would construe "stabilizing block" as "a protrusion or raised edge to reduce curling." The specification explains that the stabilizing effect of the block can include reducing curling and also "rolling, or flapping." There is no indication in the specification that by using the term "stabilizing," the applicant meant to refer only to a reduction in curling. The Court will therefore construe the term "stabilizing block" according to its ordinary meaning, which is a block that helps stabilize the bumper.

III. "Attached to the Outside Face"

Claims 1 and 10 of the '715 patent provide that the "stabilizing blocks" be "attached to the outside face and protruding from the top portion of the base layer." Keystone argues that the term "attached to the outside face" means simply that the blocks are "connected to the outside face." Chariot, on the other hand, argues that this term should be construed to mean that the stabilizing blocks are "a separate part attached to, and not integrally formed, or of a continuous mold, with the base layer."

12

Chariot's argument is based on a passage in the specification of the '715 patent describing two alternative embodiments and on Claims 1 and 11 of the '601 patent.  The specification of the '715 patent describes two alternative embodiments:

> In a preferred embodiment, the stabilizing block is of the same material as the base layer and is formed of a continuous mold with the base layer.  For example, the protective device can include a rubber base layer and rubber stabilizing block constructed from a single mold.  Alternatively, the stabilizing block can be of the same or a different material than the base layer and can be bonded, affixed, or attached by any suitable means to the base layer.

Furthermore, while the '715 patent claims stabilizing blocks that are "attached to the outside face and protruding from the top portion of the base layer," the '601 patent claims stabilizing blocks that "are integrally formed with the base layer."

Chariot posits that the specification in the '715 patent quoted above describes two alternative embodiments and that the '715 patent later claims only one, so that the claims must be read to exclude the other embodiment.  Chariot reads the '601 patent as supporting this position, as it claims the other embodiment.

13

The plain and ordinary meaning of the term "attached" does not necessarily require that the two objects attached together were once separate, or that they were "not integrally formed, or of a continuous mold" with each other, as Chariot would have it. After all, one's head is "attached" to one's body, even though they were "integrally formed" that way.  While the specification does describe two alternative embodiments, the language used in the claims of the '715 patent is not limited to one or the other.  The Federal Circuit has observed that while

> in certain pre-Phillips cases . . . use of two terms as alternatives could amount to an implicit redefinition of the terms, . . . the "implied" redefinition must be so clear that it equates to an explicit one.  In other words, a person of ordinary skill in the art would have to read the specification and conclude that the applicant has clearly disavowed claim scope or has acted as its own lexicographer.  Simply referring to two terms as alternatives or disclosing embodiments that all use the term the same way is not sufficient to redefine a claim term.

Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362, 1368 (Fed. Cir. 2012) (emphasis supplied).

Moreover, the use of the word "attached" in the embodiments does not rise to the level of a clear disavowal of claim scope or sui generis lexicography.  Indeed, the embodiment uses "attached" in context with other words to describe stabilizing blocks that are not formed of a single mold with the base layer.

14

As the specification describes, "the stabilizing block can be of the same or a different material than the base layer and can be bonded, affixed, or attached by any suitable means to the base layer." If the applicant had adopted its own meaning of the word "attached," then the rest of the description would presumably be unnecessary. Accordingly, the Court will not construe "attached" to exclude stabilizing blocks that are "integrally formed, or of a continuous mold, with the base layer."

IV. "Integrally Formed with the Base Layer"

As discussed above, Claims 1 and 11 of the '601 patent, in contrast to the '715 patent, claim stabilizing blocks that "are integrally formed with the base layer." In a continuation of its argument regarding the '715 patent's use of the term "attached," Chariot suggests that this language in the '601 patent must be construed to mean that the stabilizing block is "of a continuous mold, with the base layer." For the reasons discussed above, there is no justification for importing the phrase "of a continuous mold" from the specification into the claims themselves. Chariot has not shown that the applicant explicitly disavowed claim scope or acted as its own

15

lexicographer in using the term "integrally formed."  See Thorner, 669 F.3d at 1368.[5]

CONCLUSION

The disputed terms, as set forth in the parties' claim construction submissions of July 19, August 2, August 9, and August 16, 2013, are construed as set forth above.

SO ORDERED:

Dated:    New York, New York
          March 6, 2014

                          _____
                                DENISE COTE
                          United States District Judge

---

[5] Consideration of the sur-reply filed by Chariot without permission would not alter the outcome in this Opinion.